Our final case this morning is Kinsale Insurance Company v. Pride of St. Lucie Lodge No. 22 dash 12675 Mr. Rosenthal whenever you're ready. Thank you Your Honor may it please the court Stephen Rosenthal on behalf of Pride of St. Lucie Lodge and with me Jim Blecky counsel for the estate of Tanya Oliver and Mr. Blecky has graciously ceded me his time. This case raises some interesting questions about Florida bad faith law but I think that this court can reverse the summary judgment below in favor of the insurer Kinsale without breaking any new ground by simply applying garden variety summary judgment principles and establish Florida law on bad faith that requires the totality of the circumstances to be considered. Mr. Rosenthal I'm glad that both of you are here today good morning morning thank you I'm interested I know that you're saying that we can decide this case by just looking at existing law state law but I'm not so sure about that and so I want to have a discussion about that obviously Powell imposes a duty in cases of clear liability so the question I have and the the problem I'm having is there doesn't seem to be any state law that talks about what do we mean when we talk about clear liability so let's assume that we agreed with you and this went back to the district court and it went in front of a jury what would a jury hear about clear liability in a jury charge Florida law right because it I think you're exactly right that the Florida courts have not articulated what that two words means clear liability or where liability is clear however one can derive from a case that the Powell court cited the Rova Farms case from the Supreme Court of New Jersey what it means I understand that but I guess my my my question is obviously that's not they they cited to New Jersey law which is not Florida law but here we have to sort of look at what would the Florida Supreme Court rule on the issue and so you're asking us to look at New Jersey law which is not Florida law well right let me let me just quibble with that a bit I mean when the DCA in Powell cited the New Jersey Supreme Court's opinion it did so with a parenthetical and I think it imports that law at least for the I understand that but like in Powell I mean obviously the Powell decision one of the issues with it is it doesn't give me enough facts but the assumption is is that in that case she's driving a car and she hits two pedestrians so the liability I mean to the degree that you can say clear liability that seems pretty clear unless there were some affirmative defenses and we don't know enough about the case but I'm assuming that there was that the pedestrians didn't run in front of the car or that there were something that would be a defense and that's sort of the issue here which is there were affirmative defenses in this case and do the affirmative defenses do they come into play and does that preclude sort of a finding of clear liability or is that something that would the jury would look at so to answer your question directly I think the latter the jury would have to look at it but and one would wish there were greater clarity within Florida law defining this term but I do think that you have two guideposts both the Powell cases you know quotation of Rova Farms and Rova Farms has this potential liability of the insured is obvious standard so potential obviously potentially liable standard which is a little easier to understand and it's more malleable than clear which you say for example would be an insurance company admits or it's a case where the facts are so clear there's no or you run a red light and you and you hit another car clear liability correct those are the easy cases correct and they don't define what the floor is for clear and the second so the question is should we certify this question to the Florida Supreme Court because this is not this is not going to go away even with the statutory change the Powell issue is still going to be out there so here's the other data point I would give you that I think might answer that question at least to my satisfaction it does which is this courts published decision in American Builders which applies Powell Florida law sitting in diversity like this case and says even where the insurer believed it had a strong liability defense this is the guy who falls off a roof and gets injured and then admits apparently that he stepped off the roof and effed up is what the quote is in the opinion gives rise to a strong liability defense even in that circumstance this court just in this year I believe Judge Marcus may have written that opinion found that the Powell doctrine applies that the duty the initial affirmative duty is triggered but there was no case in American Builders about clear liability and what does that mean and the true issue here I mean the only issue in this case really is does Powell apply and if Powell applies it has to be only based on clear liability and and that sort of is really the crux of the question what does clear liability mean in this case because in American Builders obviously there you're talking about an employer employee situation here you're talking about an invitee on to the premises who has now been asked to leave so they have a trespass defense you know there's there's a lot of other affirmative defenses that they have potentially so the question becomes you know is the objective standard is there an objective standard is the objective standard going to be 70% is it a percentage 80% or is it if you have an affirmative defenses that are viable that there's no clear liability I don't know the answer to that and that's why I'm suggesting that perhaps my former colleagues in Tallahassee would be better suited to to answer this. I have four things that I want to respond to that first I'll just say I don't think a certification of the Florida Supreme Court is necessary or really even appropriate under these circumstances particularly because of the facts of this case let me just say that in the American Builders case this court had to cross that legal question in its mind to reach the decision to apply Powell despite the existence of a quote-unquote strong liability defense so that's been reached and so it would tend to disprove the notion that clear can only be running a red light or mowing down a pedestrian in broad daylight the other thing is that and this is why I started with saying garden variety summary judgment law let's let's put aside for a moment this question of the unexplored clarity of liability standard and I don't think a numerical standard by the way is just workable it's just impractical on the facts of this record Judge Moore had before him evidence from both sides about whether the liability was clear he did not credit and he at least didn't discuss so perhaps he ignored the inference we get from the short opinion the defend we were defendants in a declaratory judgment action but the claimant side of the story there were witnesses who testified in competent fashion the original lawyer who brought the retained the case Joseph Landy that it was a grave error by security not to wait longer and his view in deposition was clear liability I understand all of that Mr. Rosenthal and I and I may agree with you that Judge Moore did not give may have given short shrift to the the evidence presented by by your client but the the term clear liability means and they are going to have to get that definition in this case so I hear you Judge LaGuardia and I think your point is valid juries in Florida and federal court have been utilizing this clear liability standard since Powell was you know adopted in 1991 I think and the issue has not presented this kind of narrow uh you know dispute requiring the type of clarification to certify to the Florida Supreme Court I think that the robo farms case which is cited in Powell as I've said I won't repeat it gives a more workable standard which is part of Florida law and I think that the jury can be charged in this case assuming we win and it's remanded for trial um can I turn you can I turn you to because you're running out of time can I turn you to the the rule 56 application so as I read the record the the pride of the St. Lucie Lodge presented a number of pieces of evidence indicating that this was a case of clear liability and it looks to me like the district court didn't credit that testimony or read it in light most favorable to the lodge in applying rule 56 having said that the one piece of evidence I think that cuts against you in the record maybe not for summary judgment purposes but I want you to discuss it is what seems to be the undisputed testimony that the assailant once escorted out of the building left the property completely and then came back which would be I presume a sort of causation defense that even if they had security guards who would have escorted the people off the premises even if they had security cameras this would not have been prevented because they came back after leaving completely and I would emphasize the fact that we know that they came back there is no question that that occurred there's no question that Kinsale became aware that the party that apparently walked away at some point did come back the shooting party and what's also before the shooting that's that's my understanding of the granular pieces of evidence but I think there's another fact that's critically important there and I agree with you judge Jordan that it doesn't affect summary judgment it shouldn't but even for trial purposes thinking ahead potentially perhaps wishfully the other fact that Kinsale knew was that the security guards went inside before those people came back right but but the issue becomes and I'm just going to do a hypothetical so you have um a bar fight ensues and let's assume that they do what some of your experts claim they should have done which is you take one group out you make sure they leave the property okay then you take out the other group but the other group the first group comes back and they do a drive-by and they do a of the premises I would point you to what the expert Lou Jack cited which was an industry publication and it's it's docket entry 107-2 and inside this article about security involving bar fights it says and I quote security employees should monitor the club's parking lots or those close by and routinely used by the club's patrons starting at least 30 minutes before closing time and here's the key point and continuing until all patrons and employees have left all patrons had but the point though is is that if you have a drive-by shooting of people who have left the premises there how is it possible for security to prevent that if you're doing a drive-by shooting in a car because I mean this is the scenario not everybody had left two fighting parties one fighting party is still in the back parking lot of the lodge of the premises the security is there but I'm talking about in my hypothetical which is my hypothetical is the in their car and they do a drive-by shooting I mean that's how is that possible that you could stop that even if you're in the parking lot you have security there okay so I'm going with your hypothetical in that hypothetical if the other fighting party party b is still in the parking lot on the premises and the security guard has not gone back inside but it's actually waited as per you know standard procedure presumably and in your hypothetical somebody drives by and shoots them you're asking me whether they can intercept the bullet and prevent it that's a question that I can't answer it is entirely possible that a jury could find in that circumstance that it's not the easier answer is that the security guard should have gotten the victim to leave too well because they were excluded they should have left the premises completely too that's correct and that's the import of this and then the victim would not have been there when the assailant returned at least on the premises for which this entity is responsible I don't know what the answers are either it just seems to me that this is the sort of stuff that juries try to figure out agreed and recognizing that I've done what I always do which is go into my rebuttal time I just want to flag one other issue Judge Marcus yes I have a fact question I read the police report with considerable interest the officers said he spoke with Ferguson and excuse me Andrews the security guards Ferguson and Andrews removed Al Moore and an unknown female for fighting in the club the unowned female was described according to Ferguson and Andrews the females started arguing in the rear with a shoe causing a laceration to her face then the females separated one group gets the car and drives back in the other car is there and the shooting occurs on the premises of the lot if I have that right right do we know when one of the security guards took one group out into the parking lot he witnessed that physical altercation on the parking lot or he was told about it by someone else so I'm holding up the police report because all we know and I'm putting we being Kinsale whose knowledge is really the most critical thing in this bad faith case all it knew from the police report about that was what you just described none of the subsequent investigation this is the last point just to flag so I can come back to on a rebuttal if necessary the investigation by Kinsale they didn't receive information from Mr. Danowitz the other insurance company Mount Vernon's investigator about details that would answer your question because he did interview a couple of those security guards and that information did not make its way into the call the reason I asked is because the record looks so limited here factually there was a whole trial etc that never made it into this record presumably by the design of able counsel but it didn't make it into the record here so all we have we have a police report that the guard or at least one of them may have actually been outside when the second altercation the shoe etc actually occurred precisely and that's it's it complicates the scenario and the hypothetical that Judge Lagoa raised because in this case the security guards for the lodge our client had witnessed a continuation of the fight all the more reason to stay outside so it's a clear negligent situation clear liability from premises liability standpoint from our standpoint in this case and I think given the time I'd like to reserve whatever the court may indulge you've got your you've got your full time for rebuttal Mr. Rosenthal thank you Mr. Gettis good morning may it please the court Edward Gettis on behalf of Kinzale this appeal certainly raises very interesting issues about what to do with the owl doctrine um there Judge Lagoa is correct there is virtually no guidance uh from Florida case law as to how this test is supposed to be applied the limited guidance that I've seen that and it doesn't come from a Florida court I've seen it in in this court's decision in Eris which admittedly was a release case it wasn't it the facts weren't the same but what the court noted in that instance what it focused on was that the time period that matters is the time period at which the decision whether to tender or not tender the policy limits that's the critical time well and that's why the percentage uh analysis I get to say like if the jury comes back with 70 percent or 50 percent or whatever is sort of strange to have that analysis because the Powell analysis really is at the moment what you're supposed to be doing to investigate and to determine whether or not as it says uh whether liability is clear and injury so serious that a judgment in excess of the policy limits is likely I also find it interesting that Powell also says bad faith may be inferred from a delay in settlement negotiations which is willful and without reasonable cause um so it looks to me like also there has to be a willful determination or finding also under Powell but let's just set aside that for a moment let's just talk about the liability is clear what is really the analysis there because I'm not sure it needs to be the percentage analysis either I think your honor that I mean certainly the available case law that we have the vast majority of the available case law that we have starts from a premise that the insurer at some point in the investigation concludes yes our insured is clearly liable or we're fairly convinced and and they and they document and they note that that threshold has been crossed and most of this court's jurisprudence on this subjects tends to start at that premise even Harvey the Florida Supreme Court's decision also starts at that premise there but Harvey also was a clear liability I mean that right right exactly no no question that they were at fault right and so the question becomes what how did Powell which is a wholly judicially contrived doctrine right it's but all but almost all of Florida bad faith is I understand your honor and and that's that goes for tort law in most states right and I think Powell arose as an exception to the rule in other words where you have a situation where there is no communication because there's paladin no demand case right there was no there was no demand but there was a request for information there wasn't a demand for settlement but there was this constant colloquy back and forth between the insurance council that's that said hey we're we have mounting medical expenses we need information you're not providing the information and then when the insurance count when the insurer turns around and says well we were never asked for a settlement no demand was made Powell comes along the court and Powell comes along and says well not so fast because you can't just bury your head in the sand when there is back and forth saying here's the injury it's severe we need information and you don't do anything and so how how can't consumer can't eat the entire body of case law I I get that and I get and I get the very limited amount of help we have from the Florida courts on what quote-unquote clear liability means here's my problem with the district court's order in this case everybody agrees that under Florida law whatever the ultimate standard is it's objective right it's objective right right some court comes along and makes a determination that whether or not liability was clear at that point in time right but it's not subjective it's not what the insurer thought right it's what a reasonable insurer in that position should have done no that exercise that determination made by the insurer at that critical moment in time has to be subject to some kind of criteria some kind of standard otherwise but it's objective right I mean it's an objective standard correct okay so it's based upon what's known at the time your honor I'm sorry agreed right agreed they the lodge put in evidence from its expert from the the adjuster for Mount Vernon and from the lawyers the underlying lawyers maybe more but at least there's that saying that this was a case of clear liability now I might feel different about this case I speak only for myself if the district court had discussed that evidence and why it didn't matter but there is no discussion of any of that evidence in the district court summary judgment order and it seems to me that's a big problem because you have to look at the evidence in the light to the non-moving party bad faith is usually although not always an issue of fact under Florida law and you've got a number of pieces of evidence saying this was a case of clear liability how do you get summary judgment out of this record I'd like to pull apart sure the various different components regarding counsel's opinion about clear liability I am seriously struggling with the notion that summary judgment can be avoided simply because the lawyers who got the case in the first place once they file a bad faith claim get to come forward and say oh and it was clear to us why is that a problem because it doesn't establish anything about what Kinzale knew at the time no they're basing their they're basing their perspective on having litigated the case and having reviewed the file of what Kinzale knew at the time well I mean I want to be careful there because yes they litigated the case everything that happened post commencement of the lawsuit all the details that everything that got built up post lawsuit wasn't known to Kinzale at the time Kinzale investigate and this is when we look at this concept of the totality of the circumstances I say what was the totality of the circumstances at the time that Kinzale was put on notice and that's and that's why the the powell clear liability is at the moment that the insurer is doing it's it's in essence it's due diligence okay right yes I would agree because yet when you're doing the due diligence you have to figure out you have to determine there has to be a determination that there's clear liability and that's why that this is is the determination of what clear liability is is so important because if an affirmative defense a viable affirmative defense is available does that preclude a finding of clear liability and so that's why and there isn't a case on that so we would be making that determination in the first instance and I'm not sure that we're the appropriate body for that because it's not our law your honor I I find it hard to find fault with anything that that you just explained uh I mean there were a series of defenses right and with the court's indulgence I mean first of all let me ask you as a prefatory matter do you think we should be certifying this question to the Florida Supreme Court and asking them to tell us what clear means um well I I suspect that the certified question wouldn't just be tell us what clear means I think it would be a little bit more elaborated I understand but I'm going to the heart of the reason that we might certify well I'm not clear what it means to say clear liability well is that a question we should be certifying you didn't ask for it in your briefing correct Mr. Rosenthal didn't either is it your view we should be sending this case to the Florida Supreme Court I think this court can decide the case without certifying a question to the Florida Supreme Court based upon the Welford case and in Welford the district court not this court but this district court this court affirmed the court struggled with this question this very question what does it mean what is what is clear liability and it relied on dictionary definitions uh for absence of any other guidance and it concluded that clear is unambiguous you know without doubt that's how the district court in Welford reached its conclusion that that Powell threshold had not been crossed wouldn't that generally be an accepted understanding of the meaning of clear when appended to liability the adverb would mean plain or obvious yes without doubt unambiguous there's not much dispute about that on the other hand you might put a number on it but you're not suggesting that liability should be given a comparable statistical number are you I it's almost impossible to know where to draw the line your honor so it's the same as in the law we look at proof by a preponderance that's just barely more likely than not we look at the far end of the spectrum beyond and to the exclusion of every reasonable doubt and then we have something sort of floating in the middle we call it clear and convincing is that what we're talking about here I I wish I had the crystal ball to answer your question Judge Marcus because I it strikes me that if if you start from a premise the premise that I'm asking the court to accept that Powell articulated a doctrine that was meant to be an exception to the rule it should not be bred it should not be read overly broadly because otherwise it could as Judge Jordan you acknowledged it could swallow the whole so if you look at the language they chose clear liability in the context in which it rose what which was a a willful decision not to engage in settlement discussions you know clear has to mean something more than as my friend on the other side has suggested potential liability oh it's got to be plain and obvious let's start from that for a moment correct and so let me ask you a question this way taken in a light most favorable to the why could not a jury find if it were to credit these pieces of evidence in this record that liability was clear and obvious one the altercations and by my reading there are three all occur on the largest premises the first fight two women get into a brawl on the dance floor they're separated out by the guards one is taken out the side door which goes into the parking lot the second is taken out to the sidewalk which leads to the parking lot the second brawl occurs not just between two women but the whole group three and three get into a fight in the parking lot somebody takes a shoot and smashes the shoe in the face of someone else and slashes them in the face it may be that that was witnessed by one of the guards if you read the police report you can't really tell from this record and at some point the brawl stops three of the six go off to get their car which is off the site and the other people get in the car and they're starting to comes back in and starts blowing them away two shooters in the front seat of the car shoot at the people in the other car we know that the entire incident occurs within 10 to 15 minutes of having been basically taken out of the parking lot we know that andrews one of the shooters one of the guards was familiar with one of the shooters and he says that he knew that one of the shooters had bragged to him earlier that quote she was liable to shoot why under these circumstances couldn't a jury if they credited all of this conclude that there was clear liability the rest of the equation is easy that is to say whether the injuries are so serious that a judgment in excess of the policy limits is likely an insurer has an affirmative duty we know this is a grievous injury we know right from the report of the policeman that very day that one of the women is shot in the head she's in condition and she dies like a year later or something like that but if you credit all of this stuff and they don't have to but if they did wouldn't a juror find clear liability i do not believe so your honor for the following reason because i believe the question that the is to ask what did kinzale know back in 2015 before the lawsuit was filed it can't ask the question i agree with that the benefit i agree with all of that but the every fact that i asserted was known in advance wasn't it one that there were three fights one inside a brawl outside and then a shooting outside in the parking lot no dispute about that there's record evidence to that that your client would have been aware of on the front end two that the guards took them out through two doors three that the guard had said in advance that he knew that one of the shooters had bragged to him earlier that there was a that she was liable to to shoot for that the whole thing took only 10 or 15 minutes weren't all of those facts known sufficiently in advance but assuming all those facts were known right the returning of the shooters the targeted assault upon miss oliver is not a negligent security scenario was a negligent security claim the the garden variety of which is you failed to do something that would have prevented this harm from occurring if this were a case about your negligent security resulted in the harm the laceration from the thrown shoe maybe the situation would be slightly different but the harm here is the shooting the shooting that occurred after the shooters left and came back why because they were targeting a particular individual and if that's the case if that is if that's the dynamic that led to the harm that caused the harm it does not arise from the failure of security cameras it doesn't it doesn't arise from whether or not the security guards were volunteers it doesn't arise from whether or not there was an altercation in in the club all of that is help me with florida law did the guards have an obligation to get both groups off of the property safely do they have an obligation for example to stop the fight in the parking lot well stop there's no indicate i i don't know the answer to the question of whether they had an obligation to stop the fight in the parking lot but even if that obligation had existed it does not change that that's not the harm that so i understand that and that's why i'm asking the question did they have an obligation to get both groups safely out of their area i don't think it's the obligation to make sure that they were out of the area i'm asking about whether they had a duty of reasonable care that required them to get the two warring groups out of their property off the parking lot out of the interior was that their obligation under these circumstances when all of this happened within a very very short period of time is i don't know how to answer the question your honor honestly i i can't tell you for sure um it strikes me that the security guards under available law did what they were supposed to do which was oh my goodness i i thought let me know you're answering my question don't worry about the red line i glanced no no no it's five minutes finish finish answering judge marcus and then we'll turn to whatever's left um the they took them outside outside opposite and again i'm trying to put this in the context of what kinzale was reacting to when it received the limited information it got eight months after the incident happened the security guards break up the fight they take one group out the back door one out the front door right the ones they take out the front door run around to the back and keep fighting keep arguing right it appears that one of the security guards noticed that there had been another altercation and they waited until the parties went to their vehicles that's in the police report so did they comply yes what is there some greater heightened obligation under florida law not under the opinion of somebody hired to opine but under florida law i'm not aware of case law that specifically says that the duty of care is that you must absolutely ensure that those patrons leave the property mr gettis it isn't aren't experts routinely used in bad faith cases under florida law yes they are your honor then how tell me how the district court could properly enter its summary judgment order with at least tackling the experts report in this case it's one thing if you say here's what the expert said the report hasn't been excluded i have to consider it at summary judgment here's why i don't think it creates an issue of fact but there's nothing that that gives me a lot of pause in reviewing a summary judgment order i understand your honor and but and i say this with all due respect to judge moore the quality of his decision in terms of what he laid out is not ultimately what leads us to the correct response okay on appeal i i agree with that generally and we were applying the same standard so we can do it correctly ourselves if we think there was a mistake correct and you may tell me why the experts may affirm on any ground that tell me why the experts report in this case and his conclusion his opinion does not create an issue of fact viewing the evidence in the light most favorable to the lodge because what was clear is measured by kin what kinzale knew back in 2015 doesn't he use that barometer as his standard for giving his opinion i don't believe so i he is not he is not factoring it for example the targeted nature of the attack let's let's just take that one component right that one single component that just means you think his opinion is wrong i understand but if kinzale in 2015 thought we have a viable defense here because the shooters came back and targeted miss oliver that's not clear liability now you may lose if you go to but the question is is back in 2015 when the with the available pool of knowledge it had it made a decision about whether liability was clear and and to judge marcus's earlier point there is no dispute about the injury component of the test okay if back in 2015 kinzale pauses and says wait a minute how does this fall how does this fall within the notion the traditional florida case law of negligent security when the shooters come back and do a drive-by shooting and target that doesn't fall within it that's a possible defense what about the idea that miss oliver when she was ejected from the club was no longer an invitee she lost her status as an invitee and therefore whatever duty of care arose isn't available maybe that's another defense it may not prevail but it's something we have to consider is there a policy exclusion here because alcohol was involved we have an exclusion on our policy we have no we have no coverage if there's alcohol involved we don't know that yet we can't figure it out nobody is talking to us if this is the thought process in 2015 for kinzale and this court looking back on what was known then says well it's not crazy there's at least a colorable argument to be made that these were defenses to a negligent security claim then i don't see how powell can be met no matter what somebody years later after the benefit of a trial comes in and opines you you're a good attorney and so is mr rosenthal and you've made a very convincing jury argument to a trier effect but we're at summary judgment and you're pulling inferences just like they're pulling inferences i just see as a tough case for you under rule 56 but i've you've you've you've answered my question and you've done it in a very good way i appreciate that your honor i i'll acknowledge this is this is a difficult case where there's not much guidance in terms of so let me come back to the question judge lagoa raised should you certify yeah does this case merit certification to the florida supreme court to tell us in context with clear what clear liability means neither as your honor noted neither party requested it from our perspective we think the district court in the uh in the ellis decision used the correct determination is it clear at that time absolutely unambiguous without doubt that's the liability that kinsdale had to be confronted with and that by the way i think dovetails with the significant body of case law from this court that but that becomes the issue which is at the end of the day if the floor supreme court comes back and says if you have viable affirmative defenses it's not clear liability then it doesn't matter what the facts are i mean or if they come back and say you know it's if you if they come back at 50 percent if there's a 50 chance it's it's clear liability i don't know what they would say my point is is that at the end of the day you you're at we're asked you're asking us to opine on an area of the law that is unsettled uh even if i agreed that judge moore's reasoning was wrong okay what you got is you got we've taken you way over your time you know and i so you've got 30 seconds to wrap up i think at this point if we consider the reason for the powell doctrine that it's an exception to the rule and that it chose to use the language clear liability then i would suggest judge lagoa that where the florida supreme court is likely to come out on this issue is with the plain meaning that if you have a viable affirmative defense you can't have clear liability but if you have a preposterous defense one that has no foundation in the facts then the court examining it could look back and say no you acted in bad faith so with that i appreciate the court's time i respectfully ask that you affirm thank you all right thank you very much thank you so i'm trying to pick where to start i'd like to just start with what judge marcus asked if i may because there's a lot of issues on the table lord of law is quite clear about what an establishment's duties are it's obligations in the circumstance where this fight happens and it spills outside or they're evicted and it's still taken outside it's at page 34 of our initial brief footnote 10 we cite two cases hall versus billy jacks from the florida supreme court 1984 and borda versus east coast entertainment from a district court of appeal in 2007 the upshot of those cases is that the establishment has an obligation to protect these patrons from reasonably foreseeable harm from the fight but is she a patron when she's expelled is she an invitee still my understanding of the florida law on this is is yes now the other thing that mr gettis has done by throwing that wrench into the gears here i feel like his chocolate's in my peanut butter or something is that a good flavor what's that it's a good flavor it's a good flavor not a good argument though because it wasn't raised in the briefs um and mr gettis did not write these briefs so i'm not holding to it but a party is held to the arguments it's raised there are several things that have not been raised that were articulated by mr gettis the not an invitee concept is brand new it's not a really appropriate consideration for this appeal the um the alcohol exclusion in the policy of kinsale not raised that was a big deal in the um the other insurer mount vernon's thing for a gun exclusion so there was no coverage there that was part of the case and also the issue of the willfulness part of the powell decision not raised as an argument on appeal even below that willfulness piece is just not part of this case i think that i think he raised it because i raised it here but i was just i was just commenting and i'll give you additional time since i'm taking your time but i only raised it because in all these discussions about powell in different cases i mean there is this language that the third dca used about um bad faith being inferred based on a willfulness determination and it seems to me that it's part of the doctrine and it's just sort of like disregarded but it's in there in that in the uh opinion from the third dca that's right and i think that the way that it typically plays out in the case law is that the insurer is aware of certain facts certain data information from which willfulness can be inferred and in this case and this kind of goes to what judge marcus was asking so i'm kind of pivoting back to answer both if i can that if you look at objectively which is agreed that's the standard at what kinsale insurance company knew as of december 3rd 2015 and was that a case of clear liability under this existing florida case law the answer is very strongly yes it you suggest one interesting thing in that regard that i'd like you to comment about he says the actual shooting holding that third of the violent encounters apart occurs under circumstances that are substantially different from the fight in the have a guard watching it because what happens here is three of them leave the premises completely and they only drive back in and it's only then that the shooting occurs does that circumstance at least create a sufficient question or doubt as to be sufficient to undermine the conclusion clear liability no it doesn't certainly not not at summary judgment for two reasons that i can think of right now first i read to you what the expert read or cited from a authoritative source about negligent security practices and that practice said and i'm repeating myself is that you don't leave when party a or party b is still there probably for exactly this reason because they're fighting with each other just because someone went away they might have gone away to get a firearm which is what happened in this case so you don't leave until both parties have cleared out the second thing is that it's not clear to me that kinsale knew what you're saying judge marcus which is that the group actually left completely what they did know as of december 3rd very early 2015 was that the shooting occurred of their invitees in their premises in the parking lot that there was no proof that the security stayed outside until both parties left and that a mother of three was shot in the head those facts by themselves give rise to a strong inference of clear liability under those two cases of florida law that i cited which is a body of florida law they didn't learn facts and this is part of the willfulness inference that jumps off the page here their investigation was not adequate if you look at the claims notes of katherine thrift kinsale's claims adjuster senior claims examiner there are like three or four entries with facts about what happened over the course of many months they don't investigate on their own now they say we off loaded that to this other insurance company for which they were not paid and from which they did not get the written reports so the only information that's recorded about what kinsale knew is in those bare bones claims notes and they knew precious little that would have warded them off from the obvious conclusion at least that our side testified to from day one their evaluation was clear agree though that what you look at for knowledge at the time of what not at the time of the incident here because the incident's in march and it's not until december that they that they're notified but what they knew at the time prior to suit being filed so new or should have known yes no right new visible diligence right whatever the due diligence is at that moment in time that's what i'm saying not after suit is filed and and that's why i have to go back to look at the experts but it's what they should have known what they knew or should have known at the time of the due diligence correct and in this case that runs from november 20th 2015 when they first received the claims notice through august 5th 2016 which is when suit was filed so there's a what is that nine month period or so during which they could have i think that's the one agreement that you both have i agree with mr get us on a lot of things but yeah within this case yes um and and just to answer your question and a mindful of um if you want to see the key excerpts of lou jack's testimony the expert in our reply brief at page 12 um we unpack that and it talks about what was known at the time all the evidence from our side of the case was tethered to the relevant time period what we knew now it may be true that some lawyer who's hired later on can only indulge in hindsight but of course that is competent testimony at summary judgment and and just to understand can i ask one more question just last question mr rosenthal please um i gather from your your argument today that it's your position that an affirmative defense even a viable affirmative defense uh does not extinguish clear liability yeah in fact i think that this panel is bound by the prior precedent rule from american builders where a strong defense did not prevent reliance on the powell doctrine to conclude that this case yeah but you can't go so far as to say because it wasn't enough there it could never be enough or it wasn't enough here yeah i just don't know what not enough you're referring to your honor well there may be an affirmative defense that's sufficient to cloudy the record to make it not clear in this case even if that wasn't the case there i have a final question for you as i understand the standard it's requires two things clear liability and that the injuries have to be so serious the second one everybody agrees to are these airtight compartments or does florida law recognize that you look at this thing holistically normally when we look at risk we ask two basic questions likelihood that harm will occur gravity of the harm that will occur and we compound the two and come out with some answer that's how we do foreseeability all the time does the gravity of the harm here woman shot in the head in critical condition there in any way on the determination or are these really airtight compartments for purposes of florida law it is designed to be a totality of the circumstances analysis they are not airtight compartments an analysis of risk to the insured which the insurance company has to engage in to protect and discharge its fiduciary duty to my client the lodge requires it to consider all relevant factors and how that might play out we don't live in a numerically perfect analytic system the law is complex as you all are very well and perhaps it should be that way and when i think of risk i think of it in classic terms likelihood of harm gravity of harm and as the gravity goes up the likelihood may go down but i'm asking you whether florida courts have ever come at this problem in a bad faith case where they're looking at and we add to the one because of the magnitude of the other so the best way i can answer that question judge marcus is with two thoughts one in harvey the florida supreme court's last statement on bad faith law it said the totality of the circumstances test applies that was a powell case like this it did not say but we're going to carve out an airtight exception for this threshold determination of what clear liability but in powell that was the facts of that case were i mean to quote clear liability there was clear liability there the question was uh really harvey really dealt with like the investigation it only took nine days but it was that was a determination that it was so clear that they should have like settled on day one i mean and all of these every case is going to have different sets of facts some are going to be at the top of the scale where near the ceiling it's super clear completely clear others are going to be in the middle and i think judge marcus's point is one that's well taken it a test that comports with human experience in the way that courts have to the way that insurance companies have to evaluate risk and the way that courts have to objectively assess that evaluation of risk involves a balancing of factors and i come back to powell and i'll end with this which says and i quote they're quoting robo farms after this statement about um where liability is clear and they have a parenthetical that says where substantial injuries and potential liability of insured are obvious potential liability is obvious that's a case where a man dove into a muddy lake on a you know the defendant owned the property and it turned out to be four feet deep and he broke his neck and the defendants in the case thought that there was a strong affirmative defense that he should have known it was so shallow and it was stupid to dive into a muddy lake not knowing the depth those are the facts that the powell court relied upon by implication so clear liability is a multivariate analysis and in this especially because respectfully the district court just didn't consider all the evidence summary judgment should be reversed in this case should be tried all right thank you both very much we really appreciate the help thank you i really appreciate having you guys here